**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CLEINTE J. BUCKNER,

      Petitioner,               Civil No. 2:12-CV-12592
                                 HONORABLE GERALD E. ROSEN
v.                              CHIEF UNITED STATES DISTRICT JUDGE

LINDA TRIBLEY,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF**
**APPEALABILITY**

Cleinte J. Buckner, ("Petitioner"), presently confined at the Ojibway Correctional

Facility in Marenisco, Michigan, has filed a petition for writ of habeas corpus pursuant to

28 U.S.C. § 2254.  In his application, filed through attorney Richard M. Lustig, petitioner

challenges his convictions for voluntary manslaughter, M.C.L.A. 750.321; and possession

of a firearm during the commission of a felony [felony-firearm], M.C.L.A. 750.227b.  For the

reasons that follow, the petition for writ of habeas corpus is DENIED.  The Court will grant

a certificate of appealability to petitioner with respect to his first claim.

### I.  Background

Petitioner was originally charged with open murder and felony-firearm. [1]  Following

a jury trial in the Oakland County Circuit Court, petitioner was convicted of the lesser

---

[1] Under Michigan law, it is proper to charge a defendant with the crime of open murder.  Such a charge gives a circuit court jurisdiction to try a defendant on first and second degree murder charges.  *See Taylor v. Withrow,* 288 F.3d 846, 849 (6th Cir. 2002).

included offense of voluntary manslaughter and guilty as charged of felony-firearm. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The facts in the record are these.
>
> Defendant was sitting in his van at his mother's residence, talking to one witness. Another witness was sitting in his own van in the same (or a parallel) driveway, and two other witnesses were present. Defendant was carrying a loaded gun in a holster under his shirt, and he was apparently planning to go to a shooting range later that evening. It was established that defendant's gun was properly registered, that defendant was carrying all of the correct and required paperwork for his gun, and that defendant had a valid concealed pistol license.
>
> The victim drove up in his Jeep and spoke to defendant and other witnesses in a friendly manner. At least one of the witnesses was a friend of the victim; others at the scene merely knew the victim. An unidentified black truck approached, and the victim had a conversation with the driver of that truck. After the conversation, the victim suddenly became very angry, as if "he was a totally different person." The victim began arguing with one of the witnesses and making threats to kill everyone present. In fact, when the victim started walking toward his Jeep, one of the witnesses assumed that the victim was going to retrieve a gun.
>
> Several witnesses, including the friend of the victim and defendant, testified that the victim was well-known for having a violent reputation and for always carrying a gun. Some of those witnesses had known the victim for many years, one of whom explained that shooting up someone's house would be "consistent with [the victim's] MO." All of the witnesses who were present and who testified concluded that the victim's threats were genuine and serious. This included the testimony of a neighbor five houses away who heard the shouted threats and told her daughter to call 9-1-1.
>
> Defendant initially did not believe that the victim was entirely serious, but concluded that he was as the victim got angrier. Defendant got out of his van, told someone to call the police, and interceded in the situation with the victim. Defendant told everyone to leave and told the victim to take the matter away from his mother's house. The victim responded by again threatening to "shoot this bitch up," among other things. The victim then grabbed defendant by the shirt collar, at which point defendant's gun, which

2:12-cv-12592-GER-RSW Doc # 7 Filed 04/08/13 Pg 3 of 26 Pg ID 1962

had been concealed by his shirt, became visible. The victim tried to grab defendant's gun, but when he was unable to take the gun from defendant, the victim, while still holding onto defendant's shirt, got into his Jeep and put it into gear.,[sic].

One of the witnesses testified that when the victim tried to grab defendant's gun, he became concerned for his own life and left the scene. The last thing that witness saw as he left was that the victim had managed to get the driver's door of his Jeep open, where that witness believed the victim had his gun. The witness believed that the victim, having accessed his vehicle, was going to carry out his threats, rather than attempt to leave. Specifically, the witness stated, "He didn't say he was fixin' to leave. He said he was going to shoot this mother f----r up." As that witness drove away, he heard six or seven gunshots and assumed that victim had shot defendant. He did not see the shooting.

Another witness testified that after "[the victim] ended up putting the car in drive or whatever, [defendant] somehow got a loose and was trying-he was trying to run out of the way. That's when I heard the truck go vroom and I saw [the victim] reach for something. I didn't stay up to see exactly what it was he was reaching for." She assumed that the victim was probably reaching for a gun because of his reputation and his threats to kill everybody. She testified that she went down on the ground, but she last saw defendant in the path of the oncoming Jeep. And although the witness testified that she was not sure what the victim was going to do, she did not think he was attempting to leave the scene. She then heard gunshots, and when they stopped, she saw defendant standing "like he was in a daze and disbelief." The witness then fled the scene.

Another witness, who remained present in his own van, was facing the wrong way to see all of the encounter prior to the shooting. He testified that he would have fled the scene, but his van was blocked from leaving by the victim's Jeep. But he further testified that he saw that the victim actually had a gun in hand when the victim's Jeep drove past his van. The witness then lay down until the shooting stopped. He did not see the actual shooting, but he opined that the shooting only lasted a matter of seconds before it was all over.

Defendant testified that he shot at the victim in response to seeing the victim point a gun at him while driving the Jeep toward him. Defendant also testified that, based on his firearms training, he instinctively reloaded his gun after he finished shooting. The victim's Jeep continued to coast forward until it came to a rest against the side of a house. Police arrived on the scene within minutes, where they found defendant standing alone in his driveway, apparently, according to one officer, in a state of shock. The police initially

3

assumed that he was a witness.  But upon questioning, defendant told the police that he had shot the victim.  Specifically, when asked what had happened, defendant told the police, "[H]e pointed a gun at me ... I have a CCW permit and I shot him."  Upon investigation of the victim's Jeep, police discovered that the victim was dead, with an unregistered, loaded, cocked and chambered gun resting between his legs.

As stated previously, we conclude that there was sufficient evidence of self-defense introduced to shift the burden to the prosecutor to prove beyond a reasonable doubt that defendant did not kill the victim in self-defense.  Thus, we next consider the evidence tending to disprove the defendant's self-defense theory.

The prosecution established that defendant's gun could hold up to ten rounds and that he fired at least eight shots.  The neighbor five houses away, who had her daughter call 9-1-1, testified that she heard six gunshots, a pause of "a minute," and two more gunshots.  Three of those shots struck the victim and would each have been independently fatal, although the victim would have remained active for 30 to 45 seconds after receiving them.  One of those shots entered the victim's shoulder area, the other two were on either side of the victim's chest.  The victim also received a graze to the chest and a shot through his right forearm.  Three shots went through the windshield, and the driver's-side windows were destroyed.  Several shots came from different angles.  The victim's gun had been fired at least once in its lifetime, but no tests were performed to determine whether the victim fired it during the incident here.  Both guns were tested for fingerprints, but no identifiable fingerprints were found on either.  The victim's injuries would have been consistent with either a defensive or offensive posture.  The victim's mother testified that the victim always wore sunglasses and a watch, but neither item was recovered from the victim.  The victim had used marijuana recently, and was probably a regular user, but the pathologist explained that marijuana was a sedative rather than a stimulant.

The prosecutor argued that defendant's self-defense was disproved by the testimony that there was a pause between the first six and the final two shots, the fact that the victim had entry wounds on both sides of his body, and the fact that there was no evidence that the victim returned fire.  The prosecutor theorized that defendant pursued the victim as he was trying to leave the scene, shot the victim six times, then attempted to cover the incident up and make it look like self-defense.  Thus, the prosecutor argued that defendant reloaded his gun after firing six times, opened the passenger-side door of the Jeep, shot the victim twice more, planted a gun on the unarmed victim, and took the victim's watch and sunglasses.

*People v. Buckner,* No. 281384, * 2-5 (Mich.Ct.App. January 21, 2010).

The Michigan Court of Appeals reversed petitioner's convictions, ruling that the

prosecution had failed to prove beyond a reasonable doubt that petitioner did not act in self-

defense:

> We conclude that the prosecutor did not present such evidence to the jury.
> We simply do not find in the record any evidence that affirmatively shows that
> (1) defendant did not honestly believe he was in imminent danger of death
> or great bodily harm; (2) defendant's belief that he was in imminent danger
> of death or great bodily harm was unreasonable; (3) defendant did not
> honestly believe that deadly force was necessary to defend himself; or (4)
> defendant's belief that he needed to use deadly force was unreasonable.
> Presuming the jury chose-as it might-to disbelieve the defense's evidence,
> the remaining evidence was at most equivocal and did not reveal anything
> inculpating about defendant's mental state or actions at the time of the
> shooting.
>
> To the contrary, the undisputed evidence is that before the shooting, at the
> time defendant decided to ask all persons present to leave his mother's
> residence, he also asked someone to call the police. These actions were
> taken before any engagement between defendant and the victim. Such a
> request is inconsistent with a formulation of an intention to kill. There is, in
> addition, absolutely *nothing* in the record showing that defendant planted the
> gun found in the victim's lap. Further, the fact that bullets struck the victim
> from different angles is consistent with the victim being shot in a moving
> vehicle, which was undisputedly the case. Moreover, there is no evidence
> that defendant was in a heat of passion caused by the victim's provocation;
> to the contrary, one witness specifically noted apparent disappointment over
> defendant's failure to fight back while the victim was attempting to take his
> gun from him.

*Id.,* at * 5 (footnotes omitted)(emphasis original).

In *lieu* of granting the prosecution leave to appeal, the Michigan Supreme Court

reversed the judgment of the Michigan Court of Appeals and remanded the case to that

court for consideration of petitioner's remaining issues:

> On order of the Court, the application for leave to appeal the January 21,
> 2010 judgment of the Court of Appeals is considered and, pursuant to MCR
> 7.302(H)(1), in lieu of granting leave to appeal, we REVERSE the judgment
> of the Court of Appeals. The evidence, when taken in the light most
> favorable to the prosecution, showed that the defendant did not act in

self-defense when he fired a series of deadly shots at the victim. Whether the victim was armed with a gun was a factual issue during the trial. A reviewing court must resolve all reasonable inferences and facts in favor of the verdict. *People v. Nowack*, 462 Mich. 392, 614 N.W.2d 78 (2000). Hence, the Court of Appeals should have considered whether the defendant's use of deadly force was justified where the victim was unarmed. We REMAND this case to the Court of Appeals for consideration of the other issues raised by the defendant but not addressed by that court during its initial review of the case.

*People v. Buckner,* 486 Mich. 906, 780 N.W.2d 838 (2010)(Kelly, C.J., would grant leave to appeal); *reconsideration den.* 488 Mich. 859; 787 N.W. 2d 498 (2010).

On remand, the Michigan Court of Appeals rejected petitioner's remaining claims and affirmed his conviction. *People v. Buckner,* No. 281384 (On Remand)(Mich.Ct.App. December 7, 2010); *lv. den.* 489 Mich. 955; 798 N.W. 2d 506 (2011)(Kelly and Hathaway, J.J., would grant leave to appeal).

Petitioner has now filed a petition for writ of habeas corpus. Although there is some discrepancy between the issues raised by petitioner in his actual habeas petition and the heading of the issues that have been raised in the memorandum in support of the petition, it appears that petitioner is raising the following three claims for relief: [2]

I. Mr. Buckner's convictions for voluntary manslaughter and felony firearm violated his Due Process rights of the United States Constitution because the prosecutor in the lower court failed to present sufficient evidence to rebut the defense that Mr. Buckner acted in self-defense of himself and others.

II. The testimony established that Mr. Buckner was the victim of a sudden and violent assault by the decedent, and was not engaged in voluntary combat with him. Under these circumstances, the trial court reversibly erred and violated the defendant's due process rights as well as ineffective assistance of counsel rights when it instructed the jury that Mr. Buckner had a duty to retreat, or alternatively, the trial counsel was ineffective for failing to object to what occurred with the instruction.

---

[2] *See* Memorandum in Support of Defendant's Motion Under 28 U.S.C. § 2254 To Vacate, Set Aside, or Correct Sentence By a Person in State Custody, p. 3.

6

III.  There was prosecutorial misconduct and a violation of the petitioner's due
process rights when the prosecutor argued improperly to the jury in his
closing argument.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1)      resulted in a decision that was contrary to, or involved
>> an unreasonable application of, clearly established Federal
>> law, as determined by the Supreme Court of the United
>> States; or
>> (2)      resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An

"unreasonable application" occurs when "a state court decision unreasonably applies the

law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas

court may not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

7

'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the  Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J.,

8

concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.

### A. Claim # 1.  Petitioner's sufficiency of evidence claim is non-cognizable in habeas review.  Alternatively, the evidence was sufficient to rebut petitioner's self-defense claim.

In his first claim, petitioner argues that there was insufficient evidence presented by the prosecutor to rebut his self-defense claim.

Petitioner's claim is non-cognizable on habeas review.  Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712; 788 N.W. 2d 399 (2010).  "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission.  It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76; 815 N.W.2d 85 (2012)(quoting *Dupree,* 486 Mich. at 704, n. 11).  Although under Michigan law the prosecutor is required to disprove a claim of self-defense, *See People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses has never

been constitutionally required...." *See Smith v. United States,* 133 S. Ct. 714, 719 (2013)(quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993)(Blackmun, J., dissenting)("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir.1988)(explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F. 2d 50 (6th Cir. 1986)). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F. 3d 731, 740 (6th Cir. 1999). Petitioner does not challenge the sufficiency of the evidence in support of the essential state law elements of voluntary manslaughter and felony-firearm; rather, "he has only faulted the jury's refusal to credit his proffered affirmative excuse or justification" for the killing. *Id.* As such, petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F. 2d at 1200.

Moreover, even if this Court were to determine that petitioner's claim was cognizable, he would not be entitled to habeas relief. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a

10

reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

The Court would note that, although the facts of this case are indeed troubling and certainly the jury could have found from the evidence that petitioner acted in self-defense,

11

and indeed from the record, this Court may have found this, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). This Court, although impressed by petitioner's arguments and concerned about the verdict in this case, did not preside over the trial and, therefore, cannot evaluate in any way the critical credibility factors that only the jury was in a position to do. It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). As sympathetic as a habeas court may be to a petitioner, it must defer to the fact finder for its assessment of the credibility of witnesses. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

Under Michigan law, one acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6th Cir. 1999)(citing *People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)). Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Johnigan*, 207 F. Supp. 2d at 609

12

(citing *Kemp*, 202 Mich. App. at 322). "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

In the present case, although there was, to be certain, evidence presented that supported petitioner's claim of self-defense, the prosecution also presented evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that the prosecutor had rebutted petitioner's self-defense claim.

The victim's mother testified that she knew petitioner from the neighborhood and when she asked him why he shot her son, he merely dropped his head but mentioned nothing about her son pulling a weapon on him. (Tr. 3/12/2007, pp. 116-17).

Sandra Graham witnessed the argument and when she went inside, she heard six gunshots, followed by a pause, then followed by two more gunshots occurring about a minute later. (*Id.,* pp. 123-24, 131).

Sergeant Todd Hunt, a police officer who responded to the scene, indicated that petitioner initially told him that he could not remember who was present at the time of the shooting, but later changed his story to indicate that no one else was present when the shooting took place. (*Id.,* p. 180). Petitioner subsequently told Sergeant Hunt a third story, in which petitioner indicated that he had been talking with a man named Frank, when the victim began shooting at them. Sergeant Hunt indicated that petitioner did not appear to be in a state of shock when he spoke with him. (*Id.,* p. 186).

A firearms expert tested both petitioner's gun and the gun that had been recovered

13

from inside of the victim's vehicle and concluded that none of the recovered casings and bullet fragments had been discharged from the weapon that had been recovered from the victim's vehicle. (Tr. 3/13/2007, pp. 124-126).

A forensics expert concluded that all of the bullet holes from the victim's Jeep had been fired from outside of the Jeep into the vehicle. (*Id.,* pp. 150-51, 156-58).

The medical examiner testified that the victim died from multiple gunshot wounds, which came from parallel and opposite directions. (*Id.,* pp. 189-194).

One of petitioner's defense witnesses, Frank Jones, testified that he had known the victim for ten years and had never known him to act in an aggressive manner. (Tr.3/15/2007, p. 57).  Jones acknowledged that he never saw a gun in the victim's Jeep nor did he see the victim in possession of a gun.  Jones left before the victim got into his Jeep and did not actually see the shooting. (*Id.,* pp. 63, 75, 78, 83-84).

Although another defense witness, Devon Samples, initially claimed that he saw the victim with a gun (*Id.,* p. 105), on cross-examination he indicated that he never saw the victim with a gun. (*Id.,* p. 117).  Samples also testified that he did not at first believe the victim's threats to shoot the place up were serious, in that the victim was backing away towards his vehicle as he was making them. (*Id.,* pp. 99-100).  Samples testified that petitioner was in the middle of the street when the shooting started. (*Id.,* p. 122).

Petitioner testified that when the victim initially confronted the other person in front of his mother's house, he was not afraid of the victim and simply wanted everyone to leave. (*Id.,* p. 167).  Although petitioner claimed that the victim had a reputation for violence and committing robberies, petitioner claimed that he had no problem with the victim coming to his house because he had never been a threat to petitioner. (*Id.,* pp. 147,

14

167).  Petitioner himself testified that before he got to the victim, the victim was already inside of his Jeep backing up. (*Id.,* pp. 146, 163).   Petitioner indicated that after firing his weapon, he reloaded it. (*Id.,* p. 157).  Petitioner acknowledged firing eight gunshots. (*Id.,* p. 177).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that the prosecutor had proven beyond a reasonable doubt that petitioner did not act in lawful self-defense when he shot the victim.   There was no evidence that the weapon recovered from inside of the victim's vehicle had been fired.  Although some witnesses testified that the victim had been acting belligerently, Frank Jones testified that he had known the victim for ten years and had never known him to act aggressively. Devon Samples testified that he did not initially take the victim's threats seriously.  Some of the evidence suggested that the victim had already pulled out of petitioner's driveway and was attempting to leave at the time that the shots were fired.  At least one witness testified that petitioner was in the street when he fired his weapon at the victim.  The fact that petitioner followed the victim into the street and fired at him as he was driving away would tend to negate petitioner's allegation that he was in fear for his life.  The evidence further established that petitioner fired eight gunshots at the victim.  Additionally, at least one witness testified that she heard six gunshots, followed by a pause of about a minute, before two additional  gunshots were fired.   Petitioner admitted reloading his firearm and the pause between the two sets of shots raised an inference that petitioner reloaded his gun before firing two more shots at the victim.  The fact that petitioner fired two more shots at the victim after discharging six rounds at the victim, possibly after reloading the weapon, suggests that petitioner used excessive force and was not in fear for his life, particularly

15

when he fired the last two shots.  Moreover, evidence that from the medical examiner that the victim had been shot from two separate angles would further suggest that petitioner did not shoot the victim in self-defense.  Finally, the inconsistent stories that petitioner gave to the police concerning the incident, along with the fact that he did not tell the victim's mother that the victim had pulled a weapon on him, called into question the veracity of petitioner's self-defense claim.

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos,* 132 S. Ct. at 6 (quoting *Jackson v. Virginia,* 443 U.S. at 326).  Although there was evidence to support petitioner's self-defense claim and petitioner has given interpretations to the evidence that differ from the state court's interpretation of the evidence, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to the jury's resolution of disputed factual issues," petitioner is unable to show that the Michigan Supreme Court  unreasonably determined that the prosecutor disproved petitioner's self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).  Because the jury essentially chose to reject petitioner's testimony that he acted in self-defense, which is a credibility determination that this Court must defer to, petitioner is not entitled to habeas relief on his sufficiency of evidence claim. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 597-98 (E.D. Mich. 2001).

**B.   Claim # 2.   Petitioner has failed to show that the trial court judge's instruction to the jury regarding a defendant's duty to retreat violated his right to due process nor has he shown that counsel was ineffective for failing**

16

**to object to the court's instruction.**

Petitioner next contends that the trial judge erred when it instructed the jurors that he had a duty to retreat before he could exercise his right to self-defense, arguing that he was under no duty under Michigan law to retreat because he had been the victim of a "sudden, fierce, and violent attack."  Petitioner alternatively contends that counsel was ineffective for failing to object to this instruction.

Respondent contends that petitioner's jury instruction claim is procedurally defaulted, because petitioner failed to object to the error at trial.  Petitioner claims that his trial counsel was ineffective for failing to object to the jury instruction.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

The judge gave the jurors the following instruction:

> A person can use deadly force in self-defense, only where it is necessary to do so.  If the defendant could have safely retreated but did not do so, you may consider that fact in deciding if the defendant honestly and reasonably believed he needed to use deadly force in self defense.  However, a person is never required to retreat after a sudden fierce and violent attack, nor is he required to retreat from an attacker he reasonably believes is about to use a deadly weapon.

(Tr. 3/15/2007, pp. 250-51).

The Michigan Court of Appeals on remand rejected petitioner's claim, finding that the instruction as given accurately reflected the common law rules about self-defense, which had been adopted by the Michigan Supreme Court. *Buckner,* No. 281384 (On

17

Remand), Slip. Op. at * 3.  The Michigan Court of Appeals further concluded that because the instruction did not actually specify a duty to retreat and otherwise comported with the common law rule of self-defense, there was no error. *Id.*

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.  Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In the present case, the Michigan Court of Appeals concluded that the trial judge's instruction about the duty to retreat accurately reflected the common law rules of self-defense, as adopted by the Michigan Supreme Court, concerning the duty to retreat. Federal courts are bound by the state courts' interpretation of their own laws. *See*

18

*Mullaney v. Wilbur*, 421 U.S. 684, 690-91 1975).  The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003).  Because the Michigan Court of Appeals found that it was proper under Michigan law for the judge to have instructed the jurors on the duty to retreat, this Court must defer to that determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d at 558.

More importantly, when viewed in its entirety, the instruction as given, did not impose a duty to retreat upon the defendant if the jury determined that he was the victim of a sudden, violent attack, as petitioner suggests.  In fact, the instruction did just the opposite, namely, it advised the jurors that petitioner did not have a duty to retreat if he was the victim of a sudden, violent attack.  Because the judge's instruction regarding the applicability of the duty to retreat was consistent with the law of self-defense in Michigan, the judge did not deny petitioner the due process of law by so instructing the jury. *See Johanson v. Pung,* 795 F. 2d 48, 49 (8th Cir. 1986).

The Court will likewise reject petitioner's related ineffective assistance of counsel claim.  To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must

19

overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

 "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

As mentioned above, the Michigan Court of Appeals concluded that the self-defense instruction given in this case was an accurate reflection of Michigan law.  In light of the fact that the Michigan Court of Appeals determined that the trial court's instruction on self-defense, including the instruction concerning the duty to retreat, was proper under Michigan law, petitioner is unable to establish that counsel was ineffective for failing to object to the instruction as given. *See Davis v. Morgan,* 89 Fed. Appx. 932, 936-37 (6th Cir. 2003).  Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3.  Petitioner is not entitled to habeas relief on his prosecutorial misconduct claim.

Petitioner lastly claims that he was deprived of a fair trial because of prosecutorial misconduct.

20

Respondent notes that this claim is unexhausted because it has never been presented to the Michigan courts.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-278 (1971); *Hannah v. Conley*, 49 F. 3d 1193, 1195 (6th Cir. 1995).

The Court, however, declines to dismiss the petition on the ground that it contains an unexhausted claim.  A habeas petitioner's failure to exhaust his state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  An unexhausted claim may be addressed if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies).   In these circumstances, a federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991).  Because petitioner's remaining claim lacks merit, in the interests of efficiency and justice, the Court will address the claim, rather than dismiss the petition on exhaustion grounds.

In his final claim for relief, petitioner contends that the prosecutor committed misconduct by injecting facts that had not been introduced into the record when he argued that petitioner had planted the gun that had been recovered from the victim's vehicle, in order to suggest that petitioner manufactured his self-defense claim.

21

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645).

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, the evidence at trial permitted a reasonable inference that

22

petitioner may have planted the firearm inside of the victim's Jeep.  Although petitioner claimed that the victim had a violent reputation, the victim fired no gunshots at petitioner as he was backing his Jeep into the street, even though petitioner followed the victim into the street, before pulling his own weapon and firing several shots at the victim.  All of the casings that were recovered from the crime scene came from petitioner's weapon. Significantly, when the victim's mother asked petitioner about the shooting, petitioner mentioned nothing to her about the victim pulling a firearm on him.   Because the prosecutor was simply arguing a reasonable inference from the evidence, petitioner has failed to show that the prosecutor's remarks violated his right to a fair trial.

Moreover, even if these comments were improper, they would not entitle petitioner to habeas relief.  These comments were a small part of an argument that focused on the evidence in this case. (Tr. 3/15/2007, pp. 192-210, 230-235).  The court later instructed the jury that the lawyer's statements and arguments were not evidence. (*Id.* at pp. 238-39). Because the prosecutor's remarks about petitioner planting the weapon in the victim's vehicle were only a small part of an argument that focused heavily on summarizing the evidence and the trial judge informed the jury that the arguments were not evidence, federal habeas relief is not warranted. *Byrd v. Collins*, 209 F. 3d at 532-533. Petitioner is not entitled to habeas relief on his final claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to

2:12-cv-12592-GER-RSW   Doc # 7   Filed 04/08/13   Pg 24 of 26   Pg ID 1983

appeal the denial of a habeas petition for relief from either a state or federal conviction.[3] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Although the Court believes that its decision to deny habeas relief was correct, the Court will nonetheless grant petitioner a certificate of appealability on his first claim challenging the sufficiency of evidence in this case.  This Court notes that the Michigan Court of Appeals reversed petitioner's conviction, concluding that there was insufficient evidence to prove beyond a reasonable doubt that petitioner did not act in self-defense. Although the Michigan Supreme Court peremptorily reversed the Michigan Court of Appeals, Chief Justice Marilyn Kelly of the Michigan Supreme Court did not join in with the rest of that Court's decision, instead indicating that she would have granted leave to appeal in that case, presumably for a full briefing of the issue. *People v. Buckner,* 486 Mich. 906, 780 N.W.2d 838 (2010)(Kelly, C.J., would grant leave to appeal).  The fact that the Michigan Court of Appeals found the evidence insufficient to sustain petitioner's conviction, coupled with Chief Justice Kelly's refusal to agree to a peremptory reversal of

---

[3]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

the Michigan Court of Appeals' decision, shows that jurists of reason could decide the sufficiency of evidence issue differently or that the issue deserves encouragement to proceed further. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001)(Borman, J.)(habeas petitioner entitled to certificate of appealability from district court's determination that state appellate court reasonably applied federal law in determining that any Confrontation Clause error was harmless, where one judge on the Michigan Court of Appeals dissented and indicated that he would have reversed petitioner's conviction; dissent showed that a reasonable jurist found that the issue should have been decided differently). Accordingly, the Court will grant petitioner a certificate of appealability with respect to his first claim.

The Court will deny petitioner a certificate of appealability with respect to his second and third claims because he has failed to make a substantial showing of the denial of a federal constitutional right regarding those claims. *See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **GRANTED** with respect to petitioner's first claim and **DENIED** with respect to his second and third claims**.**


                           s/Gerald E. Rosen_____
                           Chief Judge, United States District Court

Dated:  April 8, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 8, 2013, by electronic and/or ordinary mail.

                           s/Julie Owens_____
                           Case Manager, (313) 234-5135